# Staunton

CLARK McDANIEL v. COMMONWEALTH OF VIRGINIA.

September 19. 1935.

Present, All the Justices.

710

The opinion states the case.

*Vernoy B. Tate,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

A jury has found the defendant, Clark McDaniel, guilty of housebreaking and has fixed his punishment at two years confinement in the penitentiary. That verdict the court confirmed.

A number of errors were assigned.

It is said that the indictment itself is defective in that it charges both a felony and a misdemeanor.

It reads:

"The Grand Jurors of the Commonwealth of Virginia, in and for the body of said county of Wise, and now attending said court at its October term, in the year 1933, upon their oaths do present that Arthur Amos and Clark McDaniel, on the .... day of ........, 1933, with .... in year ...... next prior to the finding of this indictment, in the said county of Wise, did unlawfully and feloniously in the night time, break and enter a certain warehouse

building, the property of the Glamorgan Coal and Land Company, then and there held under lease agreement by the Stonegap Colliery Company, a corporation; then and there under the possession and control of R. B. Alsover, receiver for the said Stonegap Colliery Company, a corporation; with intent, the goods and chattels of the said Stonegap Colliery Company, a corporation, and R. B. Alsover, receiver, in the said warehouse building, then and there found, unlawfully and feloniously, to take, steal and carry away, and; Three cases of dynamite of the value of $27.75, of the property of the said Stonegap Colliery Company, a corporation, and R. B. Alsover, receiver, in the said warehouse building, then and there found unlawfully and feloniously, did take, steal and carry away.

"And the Grand Jurors aforesaid upon their oaths aforesaid do further present that the said Arthur Amos and Clark McDaniel did unlawfully take, steal and carry away, three cases of dynamite of the value of $27.75, of the property of the said Stonegap Colliery, a corporation, and R. B. Alsover, receiver."

■ Separate felonies in separate counts may be charged in the same indictment, and the court in its discretion may quash a count or the whole indictment, order separate trials on the several counts, or compel the prosecution to elect on which one of them he will proceed.

To proceed at once to separate unrelated charges would be manifestly unfair to the accused and would tend to confuse the jury as to the issue which it was called upon to consider. *Pine* v. *Commonwealth*, 121 Va. 812, 93 S. E. 652; *Andrews* v. *Commonwealth*, 135 Va. 451, 115 S. E. 558; *Mitchell* v. *Commonwealth*, 141 Va. 541, 127 S. E. 368.

■ Distinct misdemeanors may be charged in the same indictment. Whether an election in each case should be ordered is left to the sound discretion of the trial court. *Spradlin* v. *City of Roanoke*, 134 Va. 600, 113 S. E. 732.

At common law a count for felony could not be joined with one of misdemeanor. *Scott* v. *Commonwealth*, 14 Gratt. (55 Va.) 687.

"The reason for the rule arose from the fact that one charged with a felony at common law was denied certain privileges afforded upon indictment for a misdemeanor. One indicted for a misdemeanor could appear by counsel; one charged with a felony was denied counsel. 2 Chitty, Bl. Com. Bk. 4, p. 286, note 22. Under article 1, section 9, of the Constitution, the accused is guaranteed the right of counsel." *Tenpenny* v. *State,* 151 Tenn. 669, 270 S. W. 989, 991; *Kelleher* v. *United States,* 59 App. D. C. 107, 35 F. (2d) 877.

The reasons for this rule are past and we no longer follow it;

■ "It is true that at common law a count charging a felony could not be joined in the same indictment with a count charging a misdemeanor, and this State has been considered committeed to this rule since the decision in *Scott* v. *Commonwealth, supra.* But the modern trend of decision has been to permit the joinder of felony and misdemeanor counts in the same indictment when one and the same criminal transaction is involved in the different counts, or the felonies and misdemeanors charged form distinct stages in the same offense. *Herman, et al.* v. *People,* 131 Ill. 594, 22 N. E. 471, 9 L. R. A. 182." *Edens* v. *Commonwealth,* 142 Va. 609, 128 S. E. 555, 556.

■ The indictment is good for another reason. Where a major offense is charged all lesser offenses which are incident to, and are elements of it, are included.

■ Where one is charged with housebreaking and larceny he may be found guilty of larceny, grand or petit, as the case may be, although acquitted of the housebreaking. *Vaughan* v. *Commonwealth,* 17 Gratt. (58 Va.) 576; *Myers* v. *Commonwealth,* 148 Va. 725, 138 S. E. 483.

■ It is not necessary in the instant case to charge the accused in a separate count with stealing $27.75. He might have been convicted of that offense, though acquitted of housebreaking.

The grand jury which returned this indictment was a special grand jury, in part, made up of men whose names

do not appear on the regular grand jury list which the judge is required to furnish under Code, section 4852, and this is assigned as error.

■ A special grand jury may be summoned under Code, section 4854, "the jurors to be summoned from a list furnished by the judge." This list mentioned by the statute is the list furnished when a special grand jury is ordered and has no reference to the list of regular grand jurymen. *Robertson* v. *Commonwealth,* 1 Va. Dec. 851, 20 S. E. 362; *Robinson* v. *Commonwealth,* 88 Va. 900, 14 S. E. 627.

Plaintiff's motion for a continuance was denied. The offense charged was committed in the early autumn of 1933. This case was called for trial on April 10, 1934. A witness for the Commonwealth, Lillian Mays, had moved over into Kentucky and was living in Harlan county. She was with the accused on the night in which the offense is said to have been committed. He went to her Kentucky home and procured from her this affidavit;

"State of Kentucky,

"County of Harlan:

"This day appeared before me D. H. Disney, a notary public in the county of Harlan in the State of Kentucky the affiant, Lillian Mays, and under oath made the following statement, to-wit:

"My name is Lillian Mays and I know Clark McDaniels and Arthur Amos. I am the same Lillian Mays who was in the automobile with Arthur Amos and Clark McDaniels the night they were arrested, charged with breaking into a wareroom of the Stonegap Colliery Co. I was with them until they returned to the home of Clark McDaniels in Wise, Virginia, and know positively that they did not break into the wareroom of the Stonegap Colliery Co., and know that they did not haul any powder in the car that night.

"I further state that Owen Carter, one of the arresting officers, took me and gave me Three Dollars ($3.00) in

money and also gave me all the home-brew I could drink and asked me to make a statement.

"The box I saw was picked up at the foot of Indian Creek Mountain and contained liquor. I further state that these boys did not break into any building and I was with them until they were arrested, and know they did not steal anything from Stonegap Colliery Company or anyone.

"Given under my hand this the 18th day of November, 1933.

"LILLIAN MAYS."

Plaintiff claimed that just before his case was called he learned that Lillian Mays would testify for the Commonwealth, and would repudiate her statement, and claim that it was made while she was under the influence of liquor.

The motion before the court was not that the hearing be postponed to the end that attendance of witnesses might be secured, but for a continuance. In this it differs from *Smith* v. *Commonwealth*, 155 Va. 1111, 156 S. E. 577.

A continuance is addressed to the sound judicial discretion of the trial court and its judgment will not be set aside unless plainly erroneous. *McElroy* v. *Commonwealth*, 153 Va. 877, 149 S. E. 481. This evidence was evidence of no substantive fact, but at the best could serve only to impeach a witness. Moreover it was cumulative, for other witnesses testified that Miss Mays was sober when the affidavit was signed.

The trial court did not abuse its discretion.

Objection is made to these instructions given on behalf of the Commonwealth.

"Instruction No. One: The court instructs the jury that as a matter of law, in considering this case the jury must not entertain such doubts as are merely chimerical or conjectural. A doubt, to justify an acquittal, must be a reasonable doubt, and it must arise from a candid, and impartial investigation of all the evidence in the case, and unless it is such a doubt, that were the same kind of a

doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty; if, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt.

"No. Three: The court instructs the jury that if they believe from the evidence in this case, beyond a reasonable doubt that Clark McDaniel broke into and entered the store magazine of the Stonegap Colliery Company, or was present aiding and assisting when said magazine was broken into, then, in either case, they should find the said Clark McDaniel guilty of housebreaking and fix his punishment at not less than one year nor more than ten years in the penitentiary, or in their discretion, a fine not less than $500, or a jail sentence not exceeding twelve months, either or both.

"No. Four: The court instructs the jury that they are the sole judges of the credibility of the witnesses and in determining the weight given to the evidence of any witness they may consider the appearance and demeanor of the witness on the stand; their manner of testifying; their apparent intelligence or lack of intelligence; their interest in the result of the suit; their opportunity for knowing the truth, and all other surrounding circumstances appearing on the trial and from all these things they are to determine which witnesses are more worthy of credit, and give credit accordingly."

This objection is without merit.

Instruction No. Four tendered on behalf of the accused was refused. It reads:

"And that in this connection the jury are further instructed that before they can find the defendant guilty in this case he must be proven guilty beyond all reasonable doubt by the Commonwealth, that is, to a point of certainty that is full and complete assurance, which admits of no defense, and induces the mind of the jury to act without doubt upon the conclusion to which it naturally

and reasonably leads, and that in this connection the jury is instructed that the law prefers the *case* of ninety-nine guilty persons rather than the wrongful conviction of one innocent person, and that it is better for the jury to err in acquitting than to err in convicting."

It should have been refused, *McCue's Case,* 103 Va. 870, 49 S. E. 623.

It is said that the verdict is not supported by evidence.

Unquestionably this warehouse or dynamite magazine was broken open and three cases of Monobell dynamite taken. On the night of the breaking in the accused, Arthur Amos and Lillian Mays, were riding in an automobile or taxicab owned by Moody Dale. That car was found that night in an alley by McDaniel's house. He was in it and nearby were found three cases of Monobell dynamite, such as were taken from the Stonegap Colliery Magazine. Owen Carter, a policeman of the town of Wise, found this dynamite, and arrested Dale and McDaniel. He was asked if he examined the magazine and its broken lock. His answer is:

"A. The lock had been sprung open with some kind of a metal piece. I found one in Mr. Dale's car. It is what we call a Chevrolet tire iron. It has got a gap out in the end. I noticed the end being bent. I picked it up and looked at it and on the end it had a dent and the bottom side had lent off of wood on it. Dock and I took it over and compared it with the dent and it fit perfectly."

Lillian Mays did not see the defendant break into the warehouse and does not undertake to say what were in these boxes, but she does tell us that this taxicab with Amos and McDaniel in it drove up and stopped near it.

"Clark and Arthur got out and Moody still stayed in the car and I set in the car. The car was turned back toward Wise. They turned the car before they got out. They got out and went across the road upon the hill and we set there a few minutes and one of them came back with a box. I believe it was Arthur, and put it in the back seat and Clark come and got in the front seat with us.

About that time the Wise law passed and Moody said, 'We want to do something with this.' They turned the car and went to the foot of Indian Creek Mountain and Clark hid the box. We come back and Arthur had two boxes hid on the side of the road. He put them in the car and drove back to Clark's home and when we got to Clark's home they told me and Moody to get out and go in the house. They drove up by the side of the house and come in in a few minutes. Arthur asked where the other box was. Clark told him and they said they were going back. They told Moody to stay there and told me to stay there, but I went.

"Q. Did Moody stay there?

"A. Yes, sir.

"By the court:

"Who is Moody?

"A. Moody Dale. We went back and picked up this box and got about a half of a mile this side of the commissary and got out of gas. When we got out of gas they took the box and hid it by the side of the road and turned the car and drifted back down in front of the commissary and Dock Gilliam and some other officers were sitting there. Arthur went over and asked them for some gas, I reckon, because they told him they couldn't let him have it, Arthur went over and got Mr. Davis up and he got out and gave us two gallons and I paid for the gas because they said they didn't have any money. We come on out and they picked that box up and come on to the house and I got out in front of the house and they drove the car around and come in in a few minutes. I asked Moody to take me home and they said I could stay all night, that they wasn't going any where that night."

These statements are certainly confusing, and are flatly contradicted by her affidavit, but that was a matter for the jury. *Parsons* v. *Parker,* 160 Va. 810, 170 S. E. 1.

If we put aside all that she has said, the circumstances noted and unexplained point to the guilt of the

accused. The movements of the Dale car, those that were in it, the housebreaking, the missing dynamite, where it was found, and the tire tool in it with bent and dented end, together with the distinctive scar on the magazine door, are of themselves sufficient to sustain the jury's verdict.

Evidence for the accused is to the effect that they were hauling liquor that night, and not dynamite, but it was dynamite and not liquor which was found by his home.

The verdict was returned on April 11, 1934, and on the same day the accused moved to set it aside, assigning among other reasons, after-discovered evidence. He said that juryman Wharton was an employee of the Stonegap Colliery Company when its magazine was broken into, that he lived within two miles of the dynamite magazine and that he is now employed by R. B. Alsover who was one of the receivers of that company and who is now the manager of its successor the Glamorgan Coal Co. and boards with Wharton's family, that he had once nearly run down his sister with an automobile, out of which antagonism had grown. The speed with which these after-discovered facts were uncovered—discovered on the day of judgment—might give us pause but we shall consider them on their merits.

Juryman Wharton did, in fact, live within a little less than two miles of the place where the crime was committed. He himself tells us that he thought his home was further away, that such was the general belief and that when called he knew nothing of the offense charged and had never heard of it.

Code 1887, section 4018, declares that in felony cases there shall be summoned under a writ of *venire facias* twenty persons "residing remote from the place where the offense is charged to have been committed." This continued to be the rule until the statute was amended by an act approved February 10, 1904, Session Acts 1904, chapter 17, page 15. It reads:

"If there is drawn from the box the name of a person who has died, removed from the county or corporation, or is related to the accused or to the prosecutor, or in a case of homicide to the deceased, or who is known to the clerk or other persons attending the drawing, if the case be in a circuit court of a county, to live within three miles of the place where the crime is charged to have been committed, such name shall not be placed on the list, but all other names .drawn from the box shall be placed on the list as they are drawn, and when twenty names have been so placed the drawing shall cease, and a copy of said list shall at once be made and signed by the clerk and the persons attending the drawing, which copy shall be filed in the clerk's office." ·

This statute with immaterial exceptions is the law today, subject to this change only, the distance is now two miles and not three, Code, section 4895.

In *Karnes* v. *Commonwealth*, 125 Va. 758, 99 S. E. 562, 563, 4 A. L. R. 1509, this court said:

"While the statutes with reference to the summoning and impaneling of jurors in criminal cases are mandatory and must be strictly followed, yet this court will indulge every proper presumption in favor of the regularity of the proceedings, and will not reverse the case where no injury is shown, unless the objection is made before the jury is sworn."

It will be observed that the statute tells us, for example, that the name of one who is related to the prosecutor shall not be placed on the list. This provision is unqualified and mandatory but the name of one who lives within the two mile limit is to be withdrawn only if that fact is known to the clerk or other persons attending the drawing. The burden is upon the accused to show that is so known, and this burden he has not borne.

Ample protection is given to the accused. Before the trial he may satisfy himself as to who the possible jurors are and where they live. He cannot sleep upon his rights and complain only after conviction.

"Every sheriff and city sergeant, after executing a writ of *venire facias* for a petit jury, shall prepare a list showing the name, occupation and address of each venireman summoned, and shall deliver said list to the clerk of the court from which said writ is issued, and it shall be the duty of the clerk, upon request, to exhibit said list to the parties or counsel; but no inaccuracy in said list shall constitute error." Session Acts, 1932, chapter 27, page 22.

We had occasion to consider said Code, section 4895, in the case of *McElroy* v. *Commonwealth,* 153 Va. 877, 149 S. E. 481, 484. McElroy was found guilty of malicious maiming. There was motion to set aside the verdict because "one of the jurors was related to the accused." It was held that there was no merit in that assignment. The court said that no harm had been done and called attention to this provision in that statute:

"No irregularity in any writ of *venire facias* or in the drawing, summoning, returning, or impanelling of jurors, or in making out or copying or signing or failing to sign the list or in drawing more persons than four in excess of the number to be summoned, shall be cause for summoning a new panel or for setting aside a verdict or granting a new trial, unless objection thereto specifically pointed out, was made before the jury was sworn, and unless it appears that such irregularity, or error, or failure, was intentional or such as to probably cause injustice to the Commonwealth or to the accused; * * *."

In the instant case harm is not shown. The juror thought that he lived more than two miles away and those who participated in the drawing must also have been of that opinion.

This colliery company at the time of the breaking was in the hands of Alsover and Chamberland, receivers, and for it Wharton worked, but its property had been sold and it was out of business when this case was called. He was then beyond help or hurt. He could neither be favored nor punished. In an affidavit he tells us that Alsover did occasionally stop at his mother's tavern, and

that he does now work for the Glamorgan Coal Co., a concern which purchased at public auction the property of the colliery company. He further said that when the case was called he was on friendly terms with McDaniel and was wholly unprejudiced.

Barton, another juryman, had worked as had Wharton. He tells us that he did not know McDaniel, had never heard of him and had never heard of the breaking until after the case was called for trial.

Had these facts been known when Wharton and Barton were examined on their *voir dire,* and had they then been challenged for cause, they would still have been competent unless Wharton's place of residence possibly disqualified him. Certainly none of them warrant a new trial when brought forward after verdict. The verdict itself gives no evidence of prejudice. It was for two years' imprisonment; it might have been for ten.

We find no error in the record. The judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*