16422

STATE v. MAXEY
(62 S. E. (2d) 100)

*Mr. C. T. Graydon,* of Columbia, *for Appellant,*

*Mr. T. P. Taylor, Solicitor,* of Columbia. *for Respondent,*

October 30, 1950.

FISHBURNE, Justice.

The defendant, Russell B. Maxey, was convicted of burglary and assault and battery with intent to kill, charged in two counts of the indictment. His punishment was assessed at six and a half years imprisonment, from which he appeals.

Error is assigned because a juror, John W. Miles, was excused by the trial judge after having been examined on his *voir dire*. This juror stated that he would be guided entirely by the law and the evidence, and would render an impartial verdict. He said, however, that he was a friend of the appellant and that his friendship might embarrass him in rendering a true and proper verdict. He was thereupon excused by the trial judge.

The findings of the trial court on questions of fact relating to the fitness of a juror are conclusive, and will not be disturbed on review unless manifestly erroneous. This principle of law is so well established that it hardly becomes necessary to cite authority to sustain it. Many cases are collected and discussed in *State v. Faries,* 125 S. C. 281, 118 S. E. 620.

The appellate court in reviewing the trial court's discretion always takes into consideration and makes allowance for that court's opportunity to see and assess the juror's competency by personal examination. That court is in a far better position to judge of the capacity, intelligence and impartiality of the juror than is the appellate court. There is nothing in the record in this case to show any error on the part of the trial judge in excusing the juror in question. One of our latest cases dealing with this subject is *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23.

Nor did the court commit error in allowing the State to include in the indictment in separate counts a charge of burglary, which is a felony, and a charge of assault and battery with intent to kill, which is a non-felonious crime.

At common law, a count for felony could not be joined with one of misdemeanor. The apparent necessity for the rule arose from the fact that one

charged with a felony at common law was denied certain privileges afforded upon indictment for a misdemeanor. One indicted for a misdemeanor could appear by counsel; one charged with a felony was denied counsel. 2 Chitty, Bl. Com. Bk. 4, Page 286, Note 22.

The reason for the rule has long ceased to exist. The modern trend of decision has been to permit the joinder of felony and misdemeanor counts in the same indictment, when one and the same criminal transaction is involved in the separate counts, or the felonies and misdemeanors charged form distinct stages in the same offense. *State v. Lee,* 147 S. C. 480, 145 S. E. 285; *Herman v. People,* 131 Ill. 594, 22 N. E. 471, 9 L. R. A. 182; *McDaniel v. Commonwealth,* 165 Va. 709, 181 S. E. 534; 27 Am. Jur., Sec. 132, Page 690.

For the reasons stated, the exception raising this issue is overruled.

It is next contended that the State failed to prove at least three of the requisite elements of the crime of burglary, *viz.*: (1) A breaking, (2) an entry of the dwelling house, (3) with the intent to commit a felony therein. 12 C. J. S., Burglary, § 1b, page 665. It is argued that there is no breaking in entering a house and therefore no burglary, if the person entering has a right to do so. But the evidence in this case does not sustain the contention that the appellant was authorized or possessed the right to enter the house of Miss Ann B. Pierce upon whom he is charged with having committed an assault and battery with intent to kill.

In discussing this legal issue, it becomes necessary to review the voluminous evidence offered at the trial.

At the time of the commission of the offenses charged in the indictment, which occurred in the early morning hours of August 3, 1949, the appellant was a teacher in the Department of Engineering in the University of South Carolina. He was forty years of age. The prosecuting witness,

Ann B. Pierce, was a registered nurse who worked for the Polio Foundation in the City of Columbia. She was thirty-five years of age and lived alone in her own house located in a surburban area near the City of Columbia. The parties had known each other for slightly more than a year before the commission of the crime. The friendship and intimacy which appears to have existed between appellant and Miss Pierce originally arose out of their mutual interest in photography. He was experienced in this field, and they had other similar interests. Their friendship ripened, and their relations became close. He was a married man, which fact was unknown to her, and she was a divorcee.

In the course of their association, they visited several places of interest, including seaside resorts, and on one of these occasions he took several photographs of her in the nude. About February, 1949, she rejected his proposal of marriage, after which for the first time he told her that he was married and that he and his wife lived together in the City of Columbia. He persisted in his attentions,—which had evidently become irksome and disagreeable to Miss Pierce,—and informed her that he was then in process of getting a divorce. To further his aims and to force her consent to marriage, he threatened to send the photographs or figure studies of her body to her friends, and he related to her an incident where another girl, in Tennessee, had refused to marry him under similar circumstances.

Miss Pierce continued to see him, because, as she stated, she was afraid he might carry out his threat of exposure; and she tried to get the pictures into her possession, and the negatives destroyed.

The testimony of Miss Pierce, amply corroborated, tends to show unquestioned title to her home; it was her property. That on the evening of August 3, 1949, at her home, and prior thereto, she requested and ordered him to leave her home and stay off of her property. On this occasion, upon his departure from her home, she locked all of the

doors, and later went out for a short while, leaving the doors locked. Upon her return home shortly after twelve o'clock in the night, she entered the front door and locked it behind her. She then went to her bedroom and disrobed for bed. It was then that the attack was made upon her by appellant, who had entered the house during her absence, using a key to the back door, a duplicate of which could be bought at any Ten Cents Store; and who had secreted himself beneath her bed, or in the space between the bed and the adjacent wall. He had returned to her home in his automobile, had hidden his car in a wooded area on a dead-end road nearby, and carried with him from the car to her house his pistol—a German Mauser—bullets, and a flashlight. Before gaining entrance by unlocking the back door, or after entry, he removed his shoes and placed them, the flashlight and the bullets behind Miss Pierce's bedroom door, where they could not be seen. Miss Pierce testified that she had never given him a key to the house, and had repeatedly asked him not to come upon the premises. The savage attack which he made upon her with the pistol butt, and other evidence to which we shall hereafter refer, was ample for the jury to reach the conclusion that the defendant had the intent to commit murder at the time of entering Miss Pierce's house, and thereafter when the actual attack was in progress. He denied the intent to kill, and stated that he returned to the house to obtain an explanation of her reason for selling the property in which he claimed a financial interest. He said the attack commenced when she called him an eavesdropper and applied an ugly epithet to him.

A breaking, essential to constitute the crime of burglary, may be by any act of physical force, however slight, whereby any obstruction to entering is forcibly removed. It does not require violent or mechanical force to constitute a burglarious breaking. Opening a window, picking a lock, or opening a door with a key is sufficient. If any force be required and employed to remove or displace that which has been placed there to close the open-

ing, this is enough. *State v. Chappell,* 185 S. C. 111, 193 S. E. 924; *State v. Bee,* 29 S. C. 81, 6 S. E. 911; Annotation, 139 Am. St. Rep. 1046.

Error is assigned because there was not sufficient evidence of malice to submit to the jury the charge of assault and battery with intent to kill.

In *State v. Thompson,* 76 S. C. 116, 56 S. E. 789, 791, the court upheld this charge to the jury: "[Malice] is implied from a wanton and willful act having been done without legal provocation."

Many definitions of malice may be found in our reports, as will be seen by reference to *State v. Heyward,* 197 S. C. 371, 15 S. E. (2d) 669; *State v. Milam,* 88 S. C. 127, 70 S. E. 447; and *State v. Gallman,* 79 S. C. 229, 60 S. E. 682. Malice will of course be presumed from the use of a deadly weapon provided it was used in such a manner as to indicate an intention to kill. *Fortner v. State,* 119 Fla. 150, 161 So. 94.

When the evidence bearing upon the assault committed by appellant is reviewed in the light of the foregoing authorities, it clearly appears that there is sufficient evidence of malice to sustain the conviction.

The record tends to show the animosity which appellant harbored against Miss Pierce because of jealousy, and because of her refusal of his offer of marriage, which he said could be effected after he secured a divorce from his wife, and his threats to show the nude pictures he had taken of her to her friends because of her persistence in refusing to continue her intimate association with him. The record tends to show that he became enraged when he entered her house in the early evening of August 3, 1949, discovered all the pictures removed from the walls, and her evident preparations to leave Columbia. She had previously put her property up for sale with a real estate firm.

Later that evening when he returned to her home and hid himself by her bed, about midnight, he overheard a telephone conversation carried on between Miss Pierce after her return home, and a friend in Columbia, in which she stated that she believed she had about gotten rid of that professor, referring to the appellant. It was immediately after this telephone conversation that he jumped from his place of concealment and struck her in the head with the butt of the pistol.

There is much evidence showing the ferocity of the hourlong attack which he made upon her in the darkened house, and her efforts to defend herself, which it will not be necessary to narrate or discuss in detail. Suffice it to say that her face and scalp were reduced to a pulp, teeth knocked out, and blood splattered over the bedroom walls and in pools on the floor. His clothing was soaked in her blood, and when the officers, having been summoned by neighbors who heard her cries, broke into the house, they found them on the floor of the kitchen with his legs locked around her neck and his fingers embedded in her scalp and hair, with the bloody pistol on the floor beside him. The officers stated that the bedroom, the central hall, and the kitchen looked like a slaughter house. The attack stopped only short of death.

An ambulance was summoned by the officers and Miss Pierce was taken to a hospital where she was given emergency treatment and several blood transfusions. Fifty-seven stitches were taken in her face and that number or more in her scalp. She remained in the hospital about three weeks.

In addition to the deadly character of the assault, the officers testified that appellant when they took him into custody, stated that he went out there to kill Miss Pierce. It is clear from the record that there was sufficient proof of malice to support the verdict of the jury.

It is next argued that the manner in which the solicitor conducted the case was so improper and hostile as to deny appellant his right to a fair and impartial trial. It is charged

that the solicitor disregarded the appellant's constitutional rights throughout the trial of the case; that he was partial to the prosecuting witness, showed an intense animosity to appellant, and by his remarks and innuendoes prejudiced the jury's mind against appellant to such an extent that they could not consider the case with fairness and impartiality.

Appellant's criticisms are based mainly upon the alleged conduct of the solicitor on the cross examination of the appellant and his witnesses, which he contends denied him a fair trial.

The court sustained a number of objections interposed by appellant's counsel and in some instances the jury was instructed to disregard the solicitor's questions when objections were raised. However, many of the statements which appellant now presents as constituting error were not objected to at the trial. We now refer to the incidents somewhat in detail which are raised by appellant.

Objection was made by counsel for appellant during the examination by the solicitor of the State's witness, Lieut. McCrellan of the police force. In the examination of this witness it was brought out that he was a married man, lived with his wife, and that they were at home together the early morning hours (about midnight) of August 3, 1949. This was the night that appellant, who was a married man, made his attack upon Miss Pierce. The testimony was objected to as being facetious and prejudicial; and a motion was made for a mistrial. The motion was overruled, and the court instructed the jury to disregard the testimony and not to consider it. Even if this testimony be regarded as objectionable, the instruction given by the court to the jury was sufficient to cure any impropriety in the questions or the answers. State v. Brown, 212 S. C. 237, 47 S. E. (2d) 521; State v. Blocker, 205 S. C. 303, 31 S. E. (2d) 908.

Complaint is made of the solicitor's remark to appellant during his cross examination,—to "shut up." Apparently,

the solicitor became exasperated during the cross examination of appellant, and following appellant's answer to one question the solicitor stated,—"Oh, shut up—I am sorry, Your Honor, I apologize." Objection was made to the solicitor's statement, and, in addition to the solicitor's apology, the court immediately instructed the jury to disregard what the solicitor had said.

Objection was also made to a line of examination, when appellant was on the stand which is attacked as ridiculing appellant. For instance, he was asked if he entered the class rooms of the University as a professor and there helped to mould the lives of the students. After answering in the affirmative, the solicitor asked him if he took his camera into the class room, and did he practice his camera work "everywhere from Bennettsville through C o l u m b i a—smile, Brother, it's funny."

Again a motion for mistrial was moved and overruled, the court stating that there are many questions which have little bearing, and which will not affect the jury.

As hereinabove remarked, many of the statements which appellant now insists constituted reversible error, were not objected to at the trial. The law is well established that if objections are not interposed to the introduction of testimony, or if the errors are not urged as grounds for a new trial, the question cannot be raised for the first time on appeal. *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38; *State v. Wardlaw,* 153 S. C. 175, 150 S. E. 614.

We restate as relevant here what was said in *State v. McGill,* 191 S. C. 1, 3 S. E. (2d) 257, 260: "Furthermore, as we have repeatedly held, conduct of a trial is left largely to the discretion of the presiding Judge, and this Court will not interfere unless it clearly appears that the rights of a complaining party were abused or prejudiced in some way. In the case at bar, the fair and able circuit Judge heard and saw how the solicitor was conducting or

prosecuting the cross examination of the defendant, and could thus easily determine whether his way or manner of doing it was proper or improper. He was in a better position to judge than we are, as we have before us only the printed record, which leaves much to inference as to what really happened."

While the matters referred to as constituting error ██ ██ might well be regarded as verging on the improper, much takes place in the strain and stress of a trial which must be left to the sound discretion of the trial judge and the discriminating sense of the jury. In our opinion, the rights of appellant were not prejudiced as claimed, and we cannot agree that the trial court committed error in so holding. See the related cases of *State v. Meehan,* 160 S. C. 111, 158 S. E. 151; *State v. McGill,* 184 S. C. 290, 192 S. E. 365.

It was stated in *State v. McGill, supra,* with reference to the solicitor: "He 'is a quasi judicial officer, and this court has repeatedly held that a solicitor must not, because of the high position he holds, say things, or do things, which would have any effect to prevent a citizen, however humble, from obtaining the fair and impartial trial he is entitled to under the law.' *State v. Parris,* 163 S. C. 295, 161 S .E. 496, 498. But this does not mean that he should not prosecute vigorously so long as he is just to the defendant, his duty to the State being co-existent with his duty to see that the accused is given a fair trial."

The trial court permitted the solicitor, over objection, to cross examine appellant at considerable length on the details of a former affair in which he participated in the State of Tennessee, where it developed the appellant had taken pictures in the nude of another girl and sent them through the mail, and otherwise exposed them, in retaliation for her subsequent coldness toward him.

Appellant contends that this testimony was inadmissible, and constituted reversible error. It is argued that the prosecution cannot attack the character and reputation of the ac-

cused in a criminal case for the purpose of impeaching him unless he first puts his character in issue by introducing evidence to sustain the same.

It is recognized and conceded that evidence which has a reasonable tendency to establish the **crime** charged in the indictment, is not rendered inadmissible merely because it establishes another crime; and the question which arises with respect to this sort of evidence is whether or not it has such tendency. The general range and extent of cross examination is within the discretion of the trial judge, subject to the limitation that it must relate to matters pertinent to the issue, or to specific acts which tend to discredit the witness or impeach his moral character. The discretion of the trial court in allowing cross examination is not subject to review except in cases of manifest abuse or injustice. *State v. Steadman,* 216 S. C. 579, 59 S. E. (2d) 168; *State v. Corn,* 215 S. C. 166, 54 S. E. (2d) 559; *State v. Shumpert,* 195 S. C. 387, 11 S. E. (2d) 523.

It is likewise a principle of practically universal rec- █ ognition that a conviction will not be reversed because of the admission of improper evidence unless the accused was prejudiced or harmed thereby; or unless it appears that there was a miscarriage of justice. The appellate court will consider the record as a whole in determining whether there was prejudice. *State v. Evans,* 202 S. C. 463, 25 S. E. (2d) 492; *State v. Gilstrap,* 205 S. C. 412, 32 S. E. (2d) 163; *State v. Floyd,* 174 S. C. 288, 177 S. E. 375.

The pictures in the nude taken of the prosecuting witness in this case were offered in evidence by the defense. Prior to this, Miss Pierce had testified that when she refused to marry appellant, he threatened to send the figure studies of her to her friends; and he told her about the girl in Tennessee. One of the principal issues in this case was the motive and intent of the accused, both with respect to the elements of the crime of burglary, and also the charge

of assault and battery with intent to kill. On the day before this alleged crime occurred, Miss Pierce testified that she met appellant on Forest Drive, hoping that she would be able to get her pictures back, but he again threatened her with exposure and ruination of her character as he stated he had done to the girl in Tennessee.

On cross examination, appellant admitted to a large extent the Tennessee affair; and the court allowed the solicitor to examine appellant thereabout because in the court's opinion it had a direct bearing on the truth of Miss Pierce's own testimony as to whether or not appellant had threatened her prior to the commission of the crime with which he was charged in this case.

The solicitor was not permitted to cross examine appellant about his conviction in the Federal Court for sending obscene matter through the mails, or that he had served a sentence in the Federal prison following his conviction for so doing. The examination was allowed only insofar as it related to the taking of the pictures in the nude of the other girl, and the threat of exposure; and what he did in effecting exposure.

Even if the trial court permitted the solicitor to go too far in the details of the Tennessee incident, we are of the opinion that under the facts in this case the error could have resulted in no prejudice.

In State v. Evans, 202 S. C. 463, 25 S. E. (2d) 492, 493, 495, we quoted what Judge O'Neall had to say in *State v. Ford,* 3 Strob. 517, 34 S. C. L. 517, as follows: "According, however, to a well settled rule in criminal cases, if the prisoner's guilt were clearly made out by proper evidence, in such a way as to leave no doubt in the mind of a reasonable man, his 'conviction ought not to be set aside because some other evidence was received which ought not to have been.' This rule is, I know, to be tenderly and cautiously applied; and I would be the last man on earth to apply it where there was room to doubt. But when I know that the

prisoner's guilt is as plainly made out by the other evidence, as it is possible to be done, I should feel that I was literally straining at a gnat, while, in fact, I was swallowing a camel, if I hesitated in applying it to this cause."

What we said in *State v. Evans, supra,* may aptly be repeated here: "After a thorough examination of the whole record, we are convinced that the testimony did not affect the result of the trial, and its admission did not invade a substantial right of the defendant. In the light of the testimony in this case, we do not believe that an intelligent and honest jury could be impaneled who, with a due regard for their oaths and the testimony, could legitimately come to any conclusion other than that the appellant was guilty."

It is next urged on behalf of the appellant that the trial judge erred in refusing to grant a new trial on the ground that the solicitor was allowed to examine the appellant about statements which he had purportedly made to certain witnesses or persons who were present in the court room, and who were not later put up to testify thereabout in reply by the State.

Appellant was asked if he did not tell these persons that the prosecuting witness was his common law wife, and that he had purchased her house for her. He denied these accusations. While on direct examination by his counsel, he stated that he had given substantial financial assistance to Miss Pierce in the purchase of the house. And it further appears in the record that he claimed and asserted that the prosecuting witness was his common law wife. This is corroborated by several witnesses to whom he made the statement. So that there was no need for the solicitor to call these persons who were in the court room to add their cumulative testimony to what was already in the record. We are unable to perceive where the failure to call these witnesses created any basis for alleged error.

Appellant relies on the case of *State v. Collins,* 188 S. C. 338, 199 S. E. 303. But the facts in that case are quite dif-

ferent from the facts in the case at bar. In the *Collins case* the defendant was indicted for the larceny of certain trees, and his conviction was reversed because there was no proof that the acts of severance and asportation were separate and distinct acts, and hence there could be no larceny, since trees are a part of the realty. In that case the questions asked of the defendant, as to which he was not contradicted, related directly to the sole issue in the case. It is stated in the *Collins case* that the witness was not brought to the stand to testify that the defendant had told her the things about which he was asked, and he had no opportunity to cross examine her thereabout. The court commented that under these circumstances the sinister import of the questions had gone to the jury, and that this method of examination was not looked upon with approval.

As hereinabove pointed out, there was already ample testimony in the record that the accused had made similar statements to other witnesses; and he himself admitted that he had made the statement that he and the prosecuting witness had been living together as man and wife.

In *State v. Sharpe*, 138 S. C. 58, 135 S. E. 635, 639, the solicitor failed to call a witness to the stand to contradict a defense witness after stating that he would do so. The court held that this was not prejudicial, in the following language: "We are unable to see how this prejudiced the defendant in any way. The fact that there was no contradiction of the witness, after the solicitor had notified him that he would be contradicted, should have tended to strengthen the testimony of the witness before the jury."

We think the trial judge committed no error in his refusal to grant a new trial on this ground.

In our opinion, the appellant has had a fair and impartial trial and we see no merit in any of the exceptions.

Judgment affirmed.

STUKES and OXNER, JJ., concur.

BAKER, C. J., and TAYLOR, J., concur in result.