TERRY *v.* STATE.

5-3323                                          382 S. W. 2d 361

Opinion delivered October 5, 1964.

*Anthony G. Kassos,* for appellant.

*Bruce Bennett,* Attorney General, By: *Beryl F. Anthony, Jr.,* Asst. Atty. Gen., for appellee.

ED. F. MCFADDIN, Associate Justice. Appellant, Andrew Otis Terry, was tried on an information which charged the statutory offense of burglary, being Ark. Stat. Ann. § 41-1001 (1947), which, as amended by Act No. 185 of 1955, now reads:[1]

"Burglary is the unlawful breaking or entering a house, tenement, railroad car, automobile, airplane, or any other building, although not specially named herein, boat, vessel or water craft, by day or night, with the intent to commit any felony or larceny."

From a jury verdict of guilty and judgment pronounced thereon, there is this appeal by court appointed counsel; and the point urged is that the evidence was insufficient to establish the offense of burglary. There was no evidence of *entry,* so the answer to the posed question is whether there was sufficient evidence of *breaking* to constitute burglary.

[1] In 9 Ark. Law Rev. 402 there is a short discussion of the Act No. 185 of 1955. In the same connection see also 3 Ark. Law Rev. 466.

The evidence indicated rather clearly that appellant was a "peeping tom" (see Act No. 156 of 1955, as found in Ark. Stat. Ann. § 41-1426 (Supp. 1963). He was caught outside the bathroom window of the prosecuting witness. The window was several feet above ground level and appellant had pushed back into the brick foundation the iron grill over the ventilator in order to stand on the brick and look in the bathroom window. The ventilator opening was below the floor level of the house and allowed entrance to no part of the dwelling. The metal grate was still in the back of the brick opening. Only a foothold space had been accomplished, so the pushing of the iron ventilator could not be termed a "breaking," as will be shown by the cases hereinafter cited.

Appellant had also pried loose one of the lower corners of the metal screen framing over the bathroom window, but the window was locked and none of the glass was broken. The window facing and sash had been painted during the day and there were no marks of any kind on the window or the newly painted sash or facing; so there had been nothing more than the prying loose of the lower corner of the metal screen frame. The appellant was seen as he was looking in the window and was immediately apprehended. There was no entry and only the foregoing detailed efforts toward breaking.

Has there been a sufficient breaking to establish the offense of burglary? That is the question. Governed by our own cases on breaking we must answer the posed question in the negative. In *Minter* v. *State,* 71 Ark. 178, 71 S. W. 944, a similar question was posed, and Justice Riddick, in holding that there had been no breaking, used this language:

"No one contends that there was an entry of the house by the defendant in this case, and in our opinion no breaking is shown. Actual breaking, as applied to burglary, means the making of an opening or mode of entrance into a building by force. 5 Am. & Eng. Enc. Law (2d Ed.) 45; Bishop, Stat. Crimes (3d Ed.) 312. But the evidence does not show that any opening was

made into the house. The defendant removed some slats on the outside of the window, and removed some tacks and putty from the window sash, but the glass of the window sash was still in place, and was between the defendant and the inside of the house. We are, therefore, of the opinion that the evidence did not show either a breaking or an entry into the house, and that the crime charged was not proved.''

In *Anderson* v. *State*, 84 Ark. 54, 104 S. W. 1096, the appellant had been tried and convicted of burglary and in reviewing the conviction this Court said:

''The statute does not change the character of the 'breaking' that was essential at common law to complete the offense. Such breaking at the common law was 'any disrupting or separating of material substances in any enclosing part of a dwelling house, whereby the entry of a person, arm, or any physical thing capable of working a felony therein may be accomplished.' 2 Bishop, Cr. Law § 91. Rapalje, Larceny & Kindred Offenses, 375. That the term 'break' in the statute is to be given the same meaning as that term at common law, see numerous authorities collated in 6 Cyc. 175. The essentials of the above definition as to the 'breaking' must be met by proof before the crime of burglary by 'breaking' is complete. The proof in this case falls short of it. There was no 'opening or mode of entrance' here by which a felony could have been committed within the building. *Minter* v. *State,* 71 Ark. 178. The only opening into the building was the hole in the door, and it is not shown that it was possible to abstract anything through this opening, or that any latch or fastening could have been reached whereby to effect an entrance. Therefore the judgment has no evidence to support it, and the cause is reversed and remanded for new trial.''

The Attorney General admits the effect of the foregoing cases, but insists that our definition of burglary should be ''modernized,'' and to support his contention cites, *inter alia; Simmons* v. *State* (Ga. App.), 88 S. E. 904; *State* v. *Chappell,* 185 S. C. 111; *State* v. *Wilson*

(Mo.), 125 S. W. 479; *State* v. *Rosencrans* (Wash.), 167 P. 2d 170; and *State* v. *Maxey* (S. C.), 62 S. E. 2d 100. This desire to have the definition of burglary "modernized" should be addressed to the Legislative branch of Government, rather than to the Courts. Under our holdings, as previously cited, we cannot find any "breaking" to have been accomplished in this case.

The judgment is reversed and the cause is remanded for a new trial.