### 6523

### CITY OF GREENVILLE v. SPENCER.

THE RIGHT OF CROSS-EXAMINATION tending to test the accuracy, veracity or credibility or to shake the credit of a witness is largely within the discretion of the trial Judge. Under facts here there was no abuse in ruling out questions tending to show immoral relations between a woman witness and a man not a party to the prosecution.

Before ALDRICH, J., Greenville, February 1, 1906. Reversed.

Indictment by city of Greenville against Charles E. Spencer. From order of Circuit Court reversing judgment of mayor's Court, the city appeals.

*Mr. Wm. G. Sirrine,* for appellant, cites: 68 S. C., 474; 33 S. C., 43; 38 S. C., 258; Wig. Ev., sec. 977 *et seq.*

*Mr. J. J. McSwain,* contra, cites: 16 S. C., 550; McKel. on Ev., 336; Stor. on Ev., 208-209-210; 34 S. C., 35; 41 S. C., 153; 44 S. C., 328, 359; 56 S. C., 532; 35 S. C., 202; 25 S. C., 319; 32 S. C., 410; 12 S. C., 89.

April 23, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The defendant was tried before the mayor's court of the city of Greenville and a jury, on charges of disorderly conduct and carrying an unlawful pistol in violation of city ordinances, and was found guilty on both charges and sentenced.

He appeals to the Circuit Court on two exceptions, alleging error in the ruling of the mayor in restricting defendant's counsel in the cross-examination of the witnesses for the prosecution, and in holding the matter sought to be brought out irrelevant.

The Circuit Court reversed the judgment of the mayor's court and remanded the case for a new trial from which

judgment the city of Greenville now appeals on exceptions alleging error in sustaining the grounds of appeal from the mayor's court, and remanding the case for a new trial.

The report of the mayor shows the following in connection with the ruling touching the cross-examination of the witness, Mollie Spencer: "The prosecutor, Mollie Spencer, defendant's wife, was the first witness. She appeared in Court with her hair, eyesbrows and eyelashes cut short. She testified that defendant was her husband, but that she left him several years ago on account of the interference of his mother and grandmother, with whom the couple lived. That they tried living together several times, but it was not a satisfactory arrangement, and that she finally left defendant a few months ago and went to board with a family named Mahaffey. She worked in the Mills Mill as a weaver. She had been at this employment most of the time for nine years, contributing a large part of her earnings to the support of the Spencer family.

"The witness, in answer to a general question as to what happened to her on the night of her mutilation, said that Spencer came to the house where she was boarding about five o'clock in the morning. He presented a pistol at her head, made her dress hastily, and marched her off down the street to a house some hundreds of yards distant, where defendant lived with his mother and grandmother. He called his mother into a room, locked the door, and there with a pistol in his hand made her sit in a chair while he cut her hair closely from her head. He then cut her eyebrows and eyelashes, and attempted to cut her hair from the private parts of her body. He said that he would fix her so that no other man would have anything to do with her. He then with the weapon at her head made her confess that she had been intimate with John Mahaffey, with whose family she boarded. All this time the mother of Spencer was in the room, with her back against the door. In the struggle the waist of the half-dressed woman was pulled entirely off her body. The witness said that the statement she made in

regard to her relations with Mahaffey was untrue, and only made because Spencer said he would kill her if she did not say it was true. She also said defendant broke the scissors over her head.

"Upon cross-examination, the defendant's counsel asked the witness a number of questions in regard to her relation with Mahaffey, and after a number of questions had been put, the attorney for the city objected, on the ground that Mrs. Mahaffey was in Court, and the examination was likely to lead to a family row unless Mahaffey could testify in his own defense, that the defendant was being tried for an assault, etc., and that what Mahaffey did to his own wife, or what witness had told defendant he had done to her, was irrelevant. I sustained the objection."

The general rule undoubtedly is that a witness on cross-examination may be asked any question tending to test his accuracy, veracity, or credibility, or to shake his credit by injuring his character. But this right is not unlimited, and must be largely left to the discretion of the Court charged with the orderly conduct of the trial. *State* v. *Williamson,* 65 S. C., 247, 43 S. E., 671.

There being nothing in the record to show the slightest abuse of discretion on the part of the mayor, affirmance of the ruling of the Circuit Court would amount to declaring that the right of cross-examination in the particulars mentioned is without limitation, and that any restriction thereof is ground for reversal. A different question would be presented if there had been any substantial or prejudicial interference with the right of cross-examination. Moreover, the defendant's own statements show how utterly inconsequential and harmless was the ruling of the mayor.

He testified that his wife was a prostitute when he married her, that he had lived and stayed with her before marriage, that he heard of her intercourse with Mahaffey, that she had confessed it to him, and he admitted that he had done the mutilation complained of so as to prevent her from being attractive to other men.

The other question raised was whether there was error in excluding questions asked of Georgia Mahaffey on cross-examination as to Mollie Spencer's intimacy with John Mahaffey. The ruling of the mayor is sustained by the case of *State* v. *Hasty,* 76 S. C., 115, and was clearly correct.

It should be observed that the judgment of the Circuit Court was not based upon any conclusion as to the facts, but was solely upon the alleged errors of law.

The judgment of the Circuit Court is reversed, with instruction to affirm the judgment of the mayor's court.