7350

FARIS v. AMERICAN TELEPHONE & TELEGRAPH CO.

1. TELEPHONE AND TELEGRAPH COMPANIES—TRESPASS.—There was evidence in this case from which the jury could infer the trespass complained of was committed by the defendant company.

2. IBID.—PERMIT—FRAUD—WANTONNESS.—Under the evidence here, obtaining the signature of a trustee of a church to a permit to locate a telephone line through its lands, on a parol representation entirely at variance with the stipulations in the permit, there being no showing the representations were not believed by the maker, is no evidence of fraud warranting punitive damages, but the signature of one trustee having been obtained on condition that the signatures of other trustees should also be obtained before the permit should become effective, proceeding with the work before obtaining the other signatures, is evidence of bad faith and reckless indifference.

3. IBID.—WANTONNESS.—Cutting down valuable trees outside the limits of the permit and proceeding with the work within the limits after notice that the trustees of the church signing the permit had no authority to grant the right is evidence of wantonness.

4. ATTORNEYS—NEW TRIAL.—REMARKS made by counsel during argument is not. ground for new trial when record does not show the remarks nor that objection was made to them at time.

Before WATTS, J., York, April term, 1908.    Affirmed.

Action by B. M. Faris, W. F. Boyd and W. H. Windel, committee for themselves and others, members of Flint Hill Baptist Church, against American Telephone and Telegraph Company. From judgment for plaintiffs, defendant appeals.

*Messrs. Nelson & Nelson* and *Thos. F. McDow,* for appellant.    *Messrs. Nelson & Nelson* cite: *Punitive damages should not have been recovered:* 68 S. C., 98; 69 S. C., 445, 104; 70 S. C., 531; 71 S. C., 104; 73 S. C., 367; 74 S. C., 185; 72 S. C., 343, 256, 116; 73 S. C., 520; 74 S. C., 491; 75 S. C., 208, 182; 76 S. C., 301; 77 S. C., 148, 522; 78 S. C., 109; 79 S. C., 209; 71 S. C., 153. *Acquiescence:* 48 N. E., 635; 36 Atl., 1072; 20 S. E., 755; 12 Johns., 300; 30 Atl., 760; 58 Pac., 741.   *Permit of one tenant in common is binding on all:* 70 S. C., 528; Code 1902, 2230-1; 1 Rich. Eq., 99; 48 S. C., 445; 28 S. C., 476; 44 Conn., 259; 10 Minn., 338; 63 Mo., 343; 21 Pac., 135; 43 Mich., 1; 80 Am. St. R., 83; 140 Mass., 31; 32 S. C., 410; 58 S. C., 504; 42 S. C., 431; 59 S. C., 371; 38 S. C., 358; 63 S. C., 538; 33 S. C., 483; 47 S. C., 483.   *Every trespass cannot be construed to be wilful:* 43 L. R. A., 305; 1 Chit. Pl., 166; 59 Pac., 252; 55 S. W., 925; 26 S. W., 414; 4 L. R. A., 840; 57 S. W., 973; 20 So., 345; 27 N. E., 564; 155 U. S., 438; 11 Pac., 295; 79 Am. St. R., 274; 62 N. E., 697; 92 N. W., 720; 141 N. Y., 538; 80 S. C., 49; 68 S. C., 98.   *Plaintiff sues wrong corporation:* 132 Ill., 33; 42 S. C., 519; 67 S. C., 232.   *Improper statement of counsel:* 77 S. C., 408.

*Messrs. Wilson & Wilson,* contra, cite: *Trustees had no authority to grant privileges, and appellant knew it:* 38 L. R. A., 688; 3 L. R. A., 869; 67 S. C., 342.   *Action for trespass proper remedy: Glover* v. *Remley,* 62 S. C.,    ; 38 S. C., 308; 59 S. C., 376; 76 S. C., 98; 37 S. C., 382; 46 S. C., 146; 71 S. C., 571; 79 S. C., 429.

October 29, 1909.　The opinion of the Court was delivered by

Mr. Justice Woods.　The allegations of the complaint, on which the plaintiffs recovered judgment for fifteen hundred dollars, are: That the Flint Hill Baptist Church owned a lot of land containing about twelve acres, on which was situated the church building and cemetery, "surrounded by a beautiful and valuable grove of oaks and other trees, which had been cared for and nurtured by the congregation of the said Flint Hill Baptist Church, some of them more than a hundred years, and which added greatly to the value and attractiveness of said property;" that the defendant is a corporation, doing business in the State and owning a pole line through the lands of the church; "that said defendant, on or about the 9th day of July, 1907, wilfully, unlawfully and wantonly, and in total disregard of the rights of plaintiffs and others, members composing the congregation of the Flint Hill Baptist Church, went upon said premises and cut down and destroyed about one hundred or more valuable trees in the grove above mentioned, clearing, through the entire length of said premises, a strip of land over a hundred feet in width, to plaintiffs' damage two thousand dollars; that the members composing the congregation of said Flint Hill Baptist Church are very numerous, aggregating more than one hundred and ninety in number, and that it is impracticable to bring them all before the Court in this action; wherefore, the plaintiffs above named are suing for the benefit of all, and in pursuance of a resolution regularly adopted at a business meeting of said congregation, regularly called and held for said purposes on the twentieth day of July, 1907."

By a motion for nonsuit, by requests to charge, and by a motion for a new trial, the defendant made these questions:

Did the evidence admit of no other inference than that the trees were cut by the American Telephone and Telegraph Company of South Carolina, and not by the American Tele-

phone and Telegraph Company? Was there an entire
absence of evidence tending to show that all or any of the
trees were cut in wanton or wilful disregard of the rights
of the plaintiffs?

If in the first inquiry it be assumed that the two companies
named were entirely independent corporations, yet there
was abundant evidence from which the jury might infer
that the building of this telephone line and the
cutting of these trees was the work of the defendant
company. The witnesses, Boyd and Faris, testified
they went to defendant's office in Charlotte and were told by
Reeves, the man in charge, that the trees had been cut by
defendant company. Graig, a witness on behalf of defend-
ant, testified he was employed by both companies, and could
not tell whether the defendant company embraced the
American Telephone and Telegraph Company of South
Carolina. As the representative of the defendant company
he wrote about the claim of the church for damages to Mr.
Wilson, attorney for the plaintiffs, giving as his address
the address of the defendant company' in Atlanta. All this
was certainly some evidence that those who cut the trees
were the agents of the defendant company, acting under its
direction.

The question whether there was any evidence of wilful-
ness or wantonness presents more difficulty, and requires a
statement of the evidence. The telephone line was con-
structed over the church property in 1899 under a
paper, in form a grant of a right of way to the
American Telephone and Telegraph Company of
South Carolina, which provided for the construction of the
line, but with respect to the trees it conferred only the right
"for the trimming of any trees along said lines necessary
to keep the wires cleared at least eighteen inches, and with
the right to set the necessary guy and brace poles, and attach
to trees the necessary guy wires, and with the right
to cut down trees necessary to clear the line." This paper
was signed by only one of the three trustees of the church.

While dissatisfaction was expressed with the action of the trustee, Blankenship, in signing the paper, the minutes of a church meeting, held on 12th March, 1899, set forth that "the church endorsed his action, provided they didn't cut down any trees more than eighteen inches from the wires."

The church made no complaint of the use of its land to the extent stipulated in this paper, and there is no notice that the telephone company ever had notice of any dissatisfaction.    In 1907 an enlargement of the rights of the company was desired, and one Kitchens, who was in charge of the matter for the telephone company, procured the signatures of L. B. Glover and Z. T. Bailes, two of the three trustees, to a paper which purported to give the same rights as those expressed in the paper signed in 1899, with this important addition: "And it is further agreed that all trees may be cut to a distance of fifty feet from line of poles, and all other trees within falling distance of line may also be cut."

The evidence was plenary and uncontradicted that under the polity of the Baptist Church the trustees have no authority to grant such a right as this paper imports, unless specially authorized by a meeting of the congregation.    But there is no ground for the inference that Kitchens, the agent of the company, did not believe the trustees had power to grant the right of way.    The trustee, Glover, testified he signed the paper on Kitchens' representation that he would cut only a few trees.    The parol representation, alleged to be false here, was not one as to location, where the written instrument was silent on that subject, as in *Burnett* v. *Tel. Co.*, 71 S. C., 146, 50 S. E., 780; *Mason* v. *Tel. Co.*, 71 S. C., 150, 50 S. E., 781, and *Voyles* v. *Tel. Co.*, 78 S. C., 430, 59 S. E., 78; but it related to a matter so plainly set out in the written instrument that Glover could not have failed to understand it, if he had made the least effort to inform himself    Besides, there was nothing to show that when Kitchens obtained the signature he did not in good faith suppose it would be necessary to cut only a few trees.

We think, therefore, there was no evidence of fraud in this representation warranting the finding of punitive damages.

But Glover testified that it was expressly agreed that his signature was to be of no effect unless the other trustees signed; and Kitchens admitted this to be true. After making some effort to obtain the signature of the three trustees, Kitchens, without giving any notice to Glover, went forward with the work of cutting the trees, with the signatures of only two trustees. It was certainly some evidence of bad faith and reckless indifference to the rights of the owners of the property that Kitchens acted under this paper and destroyed the property of the church, with the full consciousness that he had not complied with the conditions on which Glover's signature was obtained.

But if this be left out of view, the conduct of the agents of the telephone company, after they entered, was evidence of wantonness. Judging from the description of the church and cemetery given by the witnesses, even those most regardless of the value of trees for their practical use and for their beauty, could not have failed to be impressed with the value to the church of every one of the large trees standing within as well as without the limits mentioned in the paper. Yet there is evidence that at least one of these large oak trees was cut which was not only beyond the fifty feet, but so far away that any measurement would have shown that its fall could not injure the telephone line. This evidence went to show that no care at all was exercised, where the mind even of a careless man could not have failed to advert to the duty to take careful measurements so as to spare all valuable trees not endangering the line. In addition to this, just before the cutting began, Pulliam, the foreman of the men who were about to commence work, was warned by Mr. Blankenship, a member of the church, that the trustees had no authority to give a right of way, and that he was about to commit a very serious trespass on the church property. No attention was paid to the notice. The evidence tended to show that the members

of the church did not know that the cutting was to be done.
Pulliam, it is true, was only a subordinate agent of the tele-
phone company, but he was the agent whom the company
had sent to enter upon the property of the church and cut
the trees, for the superior agent, Kitchens, testified he was
not there until the work was about over. Pulliam must,
therefore, be regarded the agent of the telephone company,
empowered by it to assert and exercise the right it claimed
to cut the trees. Under these conditions, the warning to
him that the trustees had no authority to give the right of
way was warning to the company. It was evidence of a
wanton disregard of the legal rights of the church that this
agent of the telephone company, in the face of warning,
went forward to destroy the trees without even an investi-
gation of the authority of the trustees to grant the right of
way. This, with the other evidence we have set out, we
think, was some evidence on the issue of wilful and wanton
violation of the property rights of the plaintiffs. Whether
it was sufficient to warrant a finding of punitive damages
was a question for the jury.

Defendant's counsel has argued another exception, alleg-
ing error in the refusal of the Circuit Court to order a new
trial because of improper remarks made by counsel for the
plaintiffs in his argument to the jury. The remarks
alleged to be objectionable are not set out in the
record, nor does it appear that any objection was
made to them at the time plaintiffs' counsel was arguing the
case. For these reasons the exception on this point cannot
be considered.

The judgment of this Court is that the judgment of the
Circuit Court be affirmed.