14549

PEAY *ET AL.* v. DURHAM LIFE INS. CO.

(193 S. E., 199)

*Messrs. McDonald, Macaulay* and *McDonald,* for appellant, cite:

*Messrs. Hamilton, Gaston & Hamilton,* for respondents, cite:

October 14, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The real party plaintiff in the case is Mary Hemphill. She charges the defendant with having broken a contract of insurance with intent to defraud her and her son Tom Peay of their interests therein. The policy of insurance is on the life of Tom Peay, and Mary Hemphill is the beneficiary thereunder. Her son Tom Peay was convicted of a felony and sentenced to be confined in the State penitentiary for the period of his natural life. He is confined there now. Mary Hemphill had another policy in the same company and

policies in other companies. She alleges that after the conviction of Tom Peay, when the agent of the defendant company came to collect the premiums on her policies, he told her that he could not accept the premiums on the policy on Tom Peay; that because of his condition it would be unlawful to do so; that she refused to pay on her policy unless they would take pay for the other, and she alleges that they canceled the policy.

For answer, defendant denied all allegations not admitted. It admitted the execution and delivery of the policy, and that the policy was canceled because the premiums were not paid for a period of more than four weeks, the premiums being payable weekly, and by the express terms of the policy it lapsed for nonpayment of premiums.

The case was tried by Judge Ramage and a jury, and the verdict was for plaintiff for sums of $50.00 actual damages, and $500.00 punitive damages.

Motion for directed verdict for defendant was made in due time, and refused.

From the judgment on the verdict, the appeal comes on grounds stated in nine exceptions, which make as stated in appellant's brief, four questions, viz.:

(1) Failure to grant the motion for directed verdict.

(2) Refusal to permit defendant's counsel to cross examine Mary Hemphill with reference to her dealings with agents of other insurance companies.

(3) Error for the trial Judge to read to the jury extracts from the opinion of the Supreme Court in another case, which, as read to the jury, amounted to a charge on the facts.

(4) Error by trial Judge in stating to plaintiff's counsel in his charge, that the jury would have to find some actual damages for the plaintiff.

The motion for directed verdict was based on the grounds that:

(1) There was no evidence of a plan or scheme by defendant to bring about a cancellation of the policy.

(2) No evidence of any actionable fraud practiced by defendant; hence there is no ground for finding punitive damages.

(3) Failure to prove the allegations of the complaint.

(4) No evidence that any authorized agent of the company has ever tried to cause the policy to lapse.

(5) The policy lapsed in accordance with its terms because of the failure to pay the premiums.

We do not think the trial Judge erred in not granting the motion for directed verdict. The fundamental question was, Is there any evidence in support of the allegation that the agent of the defendant company refused to accept the premiums on the policy of Tom Peay because of his conviction and confinement in the penitentiary, and that such agent told Mary Hemphill that the policy was canceled on orders from headquarters? It is true that Mary Hemphill, who made these statements, was much confused as to the agent of the company who thus acted. She denied that it was R. D. McFadden, after having said it was McFadden. Mrs. Tipping stated that it was McFadden; that Mary told her at the time that it was he.

Mr. McFadden stated that when he and Mr. Roakes went to see Mary Hemphill about reinstating her policies, she refused to do so, saying: "If you don't want to take all of my business, I don't want any."

We think all of these statements, taken together, furnish that quantum of evidence which serves to take the case to the jury on that issue.

Mary Hemphill was much confused in regard to the name of the agent of the company who refused to take the premiums on Tom Peay's policy, and who told her the policy was canceled. First she said it was Mr. McFadden, then she said it was a man she did not know;

then, in answer to a question by her attorney, she said it was the man who had written the receipt in her premium book dated November 14. Inspection of the receipt book shows that that receipt was written by "E. C. McF.," Mrs. E. C. McFadden, a clerk in the office of defendant, who only gave receipts for premiums paid in the office. Clearly Mary Hemphill was at fault in saying that Mrs. McFadden was the person who refused to accept the premiums and who told her that the policy was canceled. In this failure by Mary Hemphill to identify any authorized agent of the company, or to prove it by any other witness thereabout, it became a vital question whether she had sustained the burden of proving that the company had with fraudulent intent canceled the policy. It is true that Mrs. Tipping states that McFadden was the agent, but she says she knows it because Mary told her so at the time; but the receipt book shows that McFadden was not there that day. It is an almost certain conclusion that Mrs. Tipping is confusing this occastion with the day when Mr. McFadden and Mr. Roakes went to see Mary Hemphill with a view to induce her to reinstate her policy.

Now, in this state of uncertainty and confusion on this most vital issue in plaintiff's case, the defendant's counsel sought to show that Mary Hemphill had confused the agents of other insurance companies with the agents of this defendant. To that end defendant's counsel sought to cross examine her in relation to policies she held with other companies, one of which, the Industrial Life Insurance Company, had offices in the same building with and adjacent to the offices of this defendant. He was denied this opportunity. It is true that counsel had cross examined the plaintiff at great length; but not on this point. It seems to us he was entitled to do so. Here was the crux of the whole case, and the matter sought to be ascertained was pertinent and vital to the issue. It is true that the trial Judge is vested with large discretion in the matter of the com-

petency, pertinency, and admissibility of testimony, but it is equally true that if, in the exercise of that discretion, he infringes upon a legal right of a party to the trial, this Court will review his action.

We think such a situation is here disclosed, and that the ruling of the trial Court was erroneous.

The trial Judge made no final ruling upon the objections covered by Exception 7, therefore, under the settled rule of this Court, that exception is not considered.

In charging the jury, the trial Judge read to it the following extract from the case of *Sutton v. Continental Cas. Co.,* 168 S. C., 372, 167 S. E., 647, 649: "In estimating such loss," that is, on actual damages Mr. Hamilton, "the jury should first ascertain what the policy was then worth to the plaintiff insured. And in allowing that, they may take into consideration any evidence as to the then ability of the insured to obtain other insurance to take the place of the insurance which the company refused to carry any longer. So you should ascertain what was the actual value occasioned by the attempted cancellation to the plaintiff, and such compensation would be regarded in law as actual damages, arising out of the cancellation. If the cancellation of the policy was attempted for the fraudulent purpose of depriving plaintiff of his right to the insurance under the contract, on account of the condition of his health then existing, if the condition of his health prevented his getting other insurance then the jury could take such fraud into consideration, and if the evidence establishes that the cancellation was accompanied and prompted by fraud on the part of the company, the jury could give the plaintiff, in addition to such actual damages as he sustained by reason of the cancellation, such further sum as the jury might determine from the evidence would be proper as punishment to the defendant for such fraudulent act. Such damages allowed as punishment for a fraudulent

act are called punitive damages, and if the jury find the plaintiff is entitled to recover damages, under the law as I have stated it to you, then you should separate the two amounts in your verdict and state the amount of each separately."

It is charged in exception eight that this paragraph, as read to the jury, amounted to a charge upon the facts of the present case, and tended to lead the jury to the belief that defendant in this case had canceled the policy; that is to say, the jury were led in this case to believe that it had been proved, or was admitted, that the defendant had canceled the policy on Tom Peay.

It is conceded that a trial Judge may read to the jury from the opinion of the Supreme Court in another case, but it is a power which should be exercised with great care. It is the duty of the Court in such case to see that the facts in the case from which he reads to the jury are in exact accord with those of the case being tried; or, if they are not so in accord, he should explain to the jury wherein the difference lie. Otherwise, he confuses them, or misleads them.

In the case of *Richardson v. Northwestern R. Co.,* 131 S. C., 57, 126 S. E., 397, 399, in a concurring opinion, Mr. Justice Marion said this: "I concur in the result. I think so much of the opinion of Mr. Justice Fraser, as refers to and disposes of the contention that the trial Judge committed error in reading from the opinion of this Court on a former appeal, is too broadly stated in that it is open to the construction that it is always proper for a trial Court to read to the jury from an opinion of the Supreme Court in that particular case. Obviously, the trial Judge on a new trial has no more right to refer to, state, or comment on the facts than the trial Court had at the first trial. In disposing of the points raised on appeal, it is not only necessary for the Supreme Court to state the facts, but it is frequently necessary to analyze and discuss the evidence

in relation to the contentions of law—a prerogative expressly denied to the trial Judge by the provisions of the Constitution, Article 5, Section 26. It is equally obvious that the trial Court is not relieved of the duty to obey the constitutional mandate by the fact that the case has been in the Supreme Court, and that an opinion stating and discussing the facts has been delivered by that Court. It follows that if the matter read to a jury from an opinion of this Court embraces any reference to or comment on the facts of the case, which it would have been improper for the trial Court to make on the first trial in declaring the law, without charging 'in respect to matters of fact,' as required by the Constitution, such reading would constitute a plain violation of the constitutional inhibition."

It is true that in that case the question was whether it was error for the Judge to read from the opinion of this Court given on appeal from a former trial in the same case, but the fundamental principle involved is the same. Indeed, we think the evil is greater when the facts of an alien case are attempted to be applied to a case of different import.

In the *Sutton case,* there was no dispute that the insurance company had attempted to cancel the policy. It undertook to justify its action by the plea that the policy contract gave it the right to cancel it in the manner it attempted to do. In our present case, the allegation that defendant had canceled, or attempted to cancel, Tom Peay's policy, was strongly denied by defendant. Around that issue the controversy turned. Any suggestion, or even intimation, by the trial Judge that that fact was settled, that it was proved against either party, however unintentionally such suggestion might be made, could not fail to be harmful.

When the trial Judge read to the jury this language, "they may take into consideration any evidence as to the then ability of the insured to obtain other insurance to take

the place of the insurance *which the company refused to carry any longer,"* and this, "You should ascertain what was the actual value occasioned by the *attempted cancellation* \* \* \* such compensation would be regarded in law as actual damages, *arising out of the cancellation,"* he infringed upon the inhibition against such action by the Court. (Italics added.) Repeatedly the attempted cancellation in that case is referred to as an established fact, and there was no error as applied to that case, but when applied to the present case by the Judge's charge without explanation or differentiation, but is given to the jury for their guidance in determining the hotly disputed issue whether in this case the policy had been canceled by the company, can there be a doubt that it was highly prejudicial and misleading, and harmful to the defendant?

When he read the words, "the insurance which the company refused to carry any longer," and the repeated expressions "attempted cancellation," "arising out of the cancellation," etc., without telling the jury that that language applied to the *Sutton case* only, the jury must have received the impression that the Judge considered it to be settled that the defendant had refused to carry Tom Peay's insurance any longer and had attempted to, or did, cancel it.

The books teem with decisions to the effect that ■ the trial Court may not, even unintentionally, intimate to the jury any opinion it may have as to the facts of the case.

The Constitution (Article 5, Section 26) in express terms reserves this power to the jurors, uninfluenced by the weight of the Judge's views.

We find no merit in the allegation of error made by Exception 9.

When his Honor said, "I believe, Mr. Hamilton, ■ they will have to find some actual damages," and Mr. Hamilton interrupted and said, "Yes, sir, the

verdict would have to be for some amount of actual damages before any amount of punitive damages," it is evident that Mr. Hamilton said just what the Judge was about to say. We do not think the jury was misled.

The judgment is reversed, and the case is remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.