17876

William M. GARRETT, Respondent, v. The MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEW JERSEY, Appellant

(124 S. E. (2d) 36)

576

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellant,*

*Messrs. Paul M. Moore* and *Matthew Poliakoff,* of Spartanburg, *for Respondent,*

February 14, 1962.

LEWIS, Justice.

This is an action by the plaintiff, William M. Garrett, to recover disability benefits under several policies of insurance issued to him by the defendant, The Mutual Benefit Life Insurance Company of New Jersey. The policies of insurance issued by the defendant provided for a total payment of $250.00 per month to plaintiff and waiver of premiums upon his becoming totally and permanently disabled within the meaning of the policy provisions. During the trial of the case the defendant moved for a directed verdict in its favor upon the ground that the only reasonable inference to be drawn from the testimony was that the plaintiff was not totally and permanently disabled. This motion was denied and the issues submitted to the jury, resulting in a verdict for the plaintiff. Subsequently, the defendant unsuccessfully moved for judgment in its favor notwithstanding the verdict or, in the alternative for a new trial, the latter motion made upon the ground that the trial Judge committed error in several rulings made during the trial of the case. The defendant has appealed from the refusal of the lower Court to grant either of the aforesaid motions.

The first question for determination is whether or not the trial Judge erred in refusing the defendant's motion for a directed verdict. The jury has concluded that the plaintiff was totally and permanently disabled within the meaning of the policy provisions and we are only concerned with whether or not there is any competent evidence to sustain such finding. Of course, it is well settled that, in deciding the question, the evidence and the reasonable inferences to be drawn therefrom must be considered in the light most favorable to the plaintiff.

The policies in question have identical provisions, and provide for the payment to the insured of the monthly income set forth in the respective policies "while the insured is regarded as totally and permanently disabled". Total disability is defined in the policies as follows:

"The insured will be regarded as totally disabled when, by reason of accidental bodily injury or by sickness, his average monthly earned income for a period of four months has not exceeded one-fourth of his former earned income (averaged monthly for the twelve months immediately preceding such four months) and such disability will be regarded as permanent while the earned monthly income of the insured, on account of such injury or sickness, does not exceed the said one-fourth."

The term "earned income", as used in the foregoing provision, is defined in the policies as follows:

"As herein used the term 'earned income' means wages, salaries, professional fees, and other amounts, received as compensation for personal services actually rendered in any profession, trade or business, not including therein amounts received as a pension or retirement allowance, or as a temporary continuance in whole or in part of customary earned income during the insured's enforced absence from business on account of accidental bodily injury or sickness."

Total disability is, therefore, defined by the foregoing policy provisions to mean inability by reason of accidental bodily injury or sickness to earn in excess of one-fourth of the insured's former earned income, and such disability is regarded as permanent while the earned monthly income of the insured, on account of such injury or sickness, does not exceed the said one-fourth. "Earned income" of the insured is not confined to wages, salaries or professional fees received as compensation for personal services from the particular business in which the insured was engaged at the time he became disabled, but includes "compensation for personal services actually rendered in *any* profession, trade or business."

Such policy expressions as "any profession, trade or business" have been interpreted "to mean the usual employment of the particular person insured, or such other employment, if any, reasonably approximating the same livelihood, as the

insured might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities." *Dunlap v. Maryland Casualty Co.,* 203 S. C. 1, 25 S. E. (2d) 881, 149 A. L. R. 1.

Total disability, therefore, under the particular policy provisions in question, does not mean inability to receive any earned income because of injury or sickness, but inability for such reasons to earn in excess of one-fourth of the insured's prior income, either from his customary employment or from any other employment in a profession, trade or business for which his training and aptitude fit him. The question then to be decided is whether or not there is any competent evidence to sustain the finding of the jury that the plaintiff was, on account of sickness, unable to earn in his usual employment, or in any other employment for which his training and aptitude fitted him, in excess of one-fourth of his former income. The issues must be determined in the light of these particular policy provisions.

The plaintiff is forty-one years of age, married and has four children. He is a college graduate with some work completed toward his Master's degree. After his graduation from school in 1939, he worked approximately fifteen years at various jobs. He worked for his last employer for approximately four and one-half years as a district sales manager, travelling over an area of five states. His earnings in this position during the last full year of employment amounted to Nine Thousand Eight Hundred and Sixty-five ($9,865.00) Dollars. Prior to his last position, the plaintiff worked at various times as an assistant to a certified public accountant, salesman for a soap company, payroll auditor for an insurance company, Internal Revenue agent, and a used car salesman. It is undisputed that the plaintiff is well educated and is by training and experience qualified to perform other work than that in which he was last engaged, including general office work.

On March 5, 1954 the plaintiff became totally disabled because of a ruptured intervertebral disc and varicose veins

in his left leg. It is undisputed that such disability continued until December 5, 1959 and the defendant made payment to the plaintiff of all disability benefits due during such period. It is undisputed that the plaintiff is still suffering from the ruptured disc and varicose veins. However, after December 5, 1959 the payment of disability benefits was discontinued, the defendant taking the position that the plaintiff was no longer disabled within the terms of the policy provisions. This action was instituted on April 21, 1960 to recover benefits allegedly due for the period from December 5, 1959, the date of the last payment by defendant, until the date of the institution of this action. The issue here concerns the alleged disability of plaintiff for that period.

The plaintiff testified in detail as to his physical condition and his inability to work because of it since 1954. He testfied that he suffered almost constant pain in his back making it impossible for him to relax, the pain radiating down both legs, but worse in the left, causing his legs to jerk and tremble at times. He further testified that he was subject to severe headaches and could only read for a short time because of the effect of the pain upon his eyes; that he is unable to sleep at night because of the intense pain; that the pain is such that he has to change his position often and lie down frequently to relieve it; and that he has a hernia.

The first medical examination of the plaintiff at the instance of the defendant was in 1954. As a result of this examination he was declared totally disabled and the defendant began paying disability benefits called for under the policies. During the period from March 5, 1954 until December 5, 1959, the plaintiff submitted himself at the request of the defendant to approximately ten physical examinations by various doctors selected by the defendant. None of these examinations affected the payment of benefits under the policies until the last one in 1959 by Dr. Tiller of Spartanburg, South Carolina, after which the defendant discontinued further payments. Dr. Tiller had never examined the plaintiff before or since and after less than a one hour ex-

amination testified, as his opinion, that the plaintiff was not then totally disabled but was able to carry on a reasonable occupation, "one that did not entail any serious or strenuous bending, lifting or straining". There was other medical testimony that the plaintiff was able to do work of a sedentary nature. The medical testimony was in agreement, however, that the plaintiff suffered from a ruptured intervertebral disc and a serious condition of varicose veins in his left leg, such conditions being of the type to cause pain. One doctor described the varicose veins as the largest that he had ever seen.

The testimony is in substantial agreement that the plaintiff is unable to perform the duties of a travelling salesman, the occupation in which he was last engaged. The defendant argues, however, that the plaintiff is not totally disabled from engaging in other types of work for which his training and experience fit him, because of the medical testimony that plaintiff, in the opinion of the doctors, could engage in work of a sedentary nature that did not require strenuous physical exertion.

We do not think that the medical testimony is conclusive of the question as to the extent of plaintiff's disability. All of such testimony agrees that the plaintiff is suffering from a ruptured disc and varicose veins, and has since 1954. Dr. Hastings, who examined him in 1958 and twice in 1960, testified that he found no substantial changes in the condition of plaintiff's back and legs from his first examination. All agree that his physical condition is such as to cause pain. None of the doctors testified that he could hold a regular job and one testified that his condition was such as to probably require periodic bed rest and change in position because of discomfort. There was medical testimony that sitting for long periods of time could cause plaintiff's legs to greatly swell because of the varicose veins. While the doctors testified that in their opinion the plaintiff could do work that did not require strenuous physical exertion, there was substantial agreement that the degree of pain

suffered by patients with ruptured disc varies, and that to a large extent the statement of the patient must be accepted as to the degree of such pain. The plaintiff testified that he suffered from disabling pain and was unable to do any work because of it. Dr. Hastings said that he saw no reason to disbelieve the plaintiff's statement as to his pain.

We are convinced that the issue as to the disability of plaintiff was properly submitted to the jury for determination.

The defendant contends, however, that the trial Judge should have directed a verdict in its favor because the plaintiff has been engaging in a coin collecting business in which he earns more than one-fourth of his former earned income. The plaintiff collects coins. He makes occasional trips to meetings of coin collectors where coins are bought, sold and exchanged. The plaintiff denies that he has engaged in coin collecting, other than a hobby, and that he has had no income therefrom. There is no evidence that the plaintiff was engaged in coin collecting as a business. The fact that the plaintiff may have invested money in coins and derived some profit therefrom in the pursuit of his hobby of coin collecting would not deprive him of his right to recover under the policies for total disability. "The fact that an insured receives income from sources other than work or occupation does not preclude his recovery of disability benefits." *Dunlap v. Metropolitan Life Ins. Co.*, 235 S. C. 206, 110 S. E. (2d) 856.

The remaining issues arise under the defendant's motion for a new trial.

It is first contended that the trial Court erred in refusing to allow the defendant's attorney to cross examine the plaintiff relative to disability income that he received from other insurance companies.

It appears that the plaintiff, in addition to the disability policies issued to him by the defendant, also carried policies providing for disability benefits with other insurance com-

panies, all of whom stopped making payments to the plaintiff at about the same time. Until payments were stopped, the plaintiff received payments from all companies totaling $6,600.00 per year, plus waiver of premiums of approximately $1,900.00 per year. Of the total payments, the defendant paid $250.00 per month and other companies paid $300.00 per month. The defendant sought on cross examination of the plaintiff to show the amount of disability payments received by the plaintiff from these other companies, on the grounds that such testimony was competent (1) on the issue of the credibility of plaintiff's testimony, (2) to show the reason for the failure of plaintiff to work, (3) because of the direct examination of plaintiff as to the same matters, and (4) under the policy provisions. The trial Judge refused to allow such cross examination. A determination of these issues requires a review of the exercise by the trial Court of its power to control the range of the cross examination of witnesses during the trial.

It is well settled that the extent to which cross examination of a witness may go is a matter resting within the discretion of the trial Judge. The rule is thus stated in *State v. Maxey,* 218 S. C. 106, 62 S. E. (2d) 100: "The general range and extent of cross examination is within the discretion of the trial judge, subject to the limitation that it must relate to matters pertinent to the issue, or to specific acts which tend to discredit the witness or impeach his moral character. The discretion of the trial court in allowing cross examination is not subject to review except in cases of manifest abuse or injustice."

Ordinarily, in an action of this kind, evidence of the receipt by the insured of disability benefits under policies of insurance with other companies is irrelevant to any issue in the case. It is not "earned income" under the policy provisions in question, and its receipt by the insured ordinarily sheds no light on whether or not the insured is totally disabled under the policies issued by the defendant. They are separate and distinct liabilities.

In the case of *Dunlap v. Metropolitan Life Ins. Co., supra,* 235 S. C. 206, 110 S. E. (2d) 856 effort was made to examine the plaintiff before trial as to income received from sources other than work or occupation. It was held that the receipt of such income by the insured did not preclude his recovery of disability benefits, and that an examination of the insured as to such matters was "wholly irrelevant to the issues involved" in the insured's action to recover benefits under the disability provisions of the policy.

The defendant argues, however, that such testimony was proper to show the plaintiff's motive for not working, since under all policies held by him his income from disability payments amounted to approximately two-thirds of his former earned income. While recognizing that no hard and fast rule could be laid down to govern the admissibility of such evidence on the foregoing ground, it was held in the case of *Wiener v. Mutual Life Ins. Co. of N. Y.,* 352 Mo. 673, 179 S. W. (2d) 39, under a very similar factual situation to the one here involved, that it was prejudicial error to permit the defendant on cross examination of the insured to bring out that he was receiving disability payments from other insurance companies amounting to $13,750.00 a year.

It is the position of the defendant, however, that such cross examination was made proper by the direct examination of the plaintiff as to the same facts. The direct examination relied upon is as follows:

"Q. Mr. Garrett, if you were able, would you work, go to work now?

"A. I certainly would. I much rather be working than in the condition I am now.

"Q. The disability payments you receive, what is the comparison between that and your earned income the last year that you were employed?

"A. Some thirty-five or forty per cent.

"Q. Which is more, your earned income or the amount you were paid disability from the insurance company?

"A. My earned income would be approximately three times from what I draw from these insurance companies, Yes, Sir."

The trial Judge apparently construed the foregoing testimony to relate only to the income received from the policies issued by the defendant and not to policies issued by other companies. In this we cannot say that he was incorrect. Testimony had been introduced as to the disability income of the plaintiff under the policies issued by the defendant and as to his prior earned income, which showed his prior income to have been approximately three times that of the disability payments. When considered in its context and in relation to the questions asked, it may reasonably be construed as referring only to the policies involved in this action. It was the duty of the trial Judge to confine the evidence to the issues in the case. Testimony as to the income from other policies was immaterial to the issues, and we cannot say that the trial Judge unduly limited the cross examination.

As heretofore stated, the extent and range of the cross examination of witnesses is left largely to the discretion of the trial Judge. After carefully considering the record we do not think that there was any abuse of such discretion in refusing to permit the cross examination of the insured as to the receipt by him of disability benefits under policies with other companies.

The defendant contends that, in any event, the testimony relative to disability insurance carried with other companies was made relevant by a policy provision which provided for a reduction of the disability payments if the aggregate of the monthly income under the policies issued by the defendant and any other insurance companies shall exceed 75% of his prior earned income. An examination of the pleadings and the record clearly shows that there was no issue in the trial of this case as to the foregoing policy provision. The amount of the prior earned income

of the plaintiff was conceded, as was the amount drawn as disability benefits under all policies. The application of this policy provision was not in issue and testimony thereabout was properly excluded.

During the trial of the case, Dr. Walter D. Hastings, Jr. testified for the plaintiff. He stated that he examined the plaintiff in 1958, in February, 1960 and again on September 30, 1960. As heretofore stated, the issue in the case was as to the disability of the plaintiff from December 5, 1959 until April 21, 1960. Dr. Hastings was permitted to testify, over the objection of the defendant, as to his examination of the plaintiff on September 30, 1960, approximately five months after the period involved in this action. It is claimed that this was error. The position of the defendant is without merit. The doctor did not testify that the plaintiff was totally disabled on September 30, 1960. He stated that in all of his examinations his findings were substantially the same, and that, in his opinion, the plaintiff could do some work of a sedentary nature. The jury was clearly instructed as to the period covered by their inquiry and could not have been confused as to the issue.

The defendant next argues that the lower Court committed error by unduly restricting the cross examination of Dr. Hastings relative to the general effect of a ruptured disc and the general treatment for it. In cross examining the doctor, counsel for the defendant attempted to elicit an answer as to what was generally done in the treatment of a patient suffering with a ruptured disc. It appeared that various factors entered into the treatment of such ailments, depending upon the nature and extent of the damage to the disc. The trial Judge ruled that the cross examination would be restricted to the treatment recommended in the plaintiff's case, since the doctor had examined him on three different occasions and had testified as to his findings. The doctor in this instance was familiar with the condition of the plaintiff. The inquiry was as to this par-

ticular patient, and no reason appears to have warranted extending the examination to include what the treatment might have been in other cases.

The defendant next charges error in the exclusion of testimony relative to the resale value of coins purchased by the plaintiff. There was no error in so doing. We have hereinabove pointed out that the income derived from a hobby of coin collecting would not deprive the plaintiff of his right to collect total disability benefits. Testimony as to the resale value of coins purchased by the plaintiff was offered to show the margin of profit in such transactions. Since income from such a hobby could not affect the issue of total disability of the plaintiff under the policy provisions, it was not error to exclude the testimony in question.

Finally, error is alleged in the refusal of the trial Judge to give the following instruction to the jury:

"I charge you that you are not to consider whether this plaintiff drew only $250.00 per month in disability payments as against a larger amount which he earned when actually working, because this is not an issue, it being solely whether the plaintiff is disabled under the terms of the policy."

This charge was requested by the defendant solely on the ground that the attorneys for the plaintiff had allegedly argued to the jury that the plaintiff would not quit a job making nearly Ten Thousand ($10,000.00) Dollars per year in order to draw Two Hundred Fifty ($250.00) Dollars per month disability insurance income if he was not in fact totally disabled. The defendant contends that the requested charge was proper in view of the foregoing argument since the Court had previously excluded testimony which showed the disability income of plaintiff from all companies to be $550.00 per month.

No objection was interposed to the challenged argument at the time and the record fails to disclose the argument made. The first mention by counsel of the alleged improper argument was at the time of the requested instruction, made

at the conclusion of the charge to the jury. The order of the trial Judge refusing the motion for a new trial indicates that there was doubt in his mind as to the nature of the argument made, since objection thereto was not made at the time so that it could be entered in the record.

It is the duty of counsel to make timely objection to argument considered improper, so that the challenged argument can be entered in the record and a ruling then made by the trial Judge thereabout. Where this is not done, as here, and the alleged improper remarks are not set out in the record, exceptions to the refusal of the trial Judge to grant a new trial because of improper remarks by counsel will not be considered on appeal. *Lawrence v. Southern Railway*, 169 S. C. 1, 167 S. E. 839; *Brown v. Atlantic Coast Line R. R. Co.*, 87 S. C. 314, 69 S. E. 510; *Faris v. American Telephone & Telegraph Co.*, 84 S. C. 102, 65 S. E. 1017.

Affirmed.

TAYLOR, C. J., and Moss, J., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting).

I do not agree with the majority opinion in its entirety or the result therein reached, and respectfully dissent therefrom in the particulars hereinafter set forth.

I concur in the majority opinion that the issue as to the disability of respondent was properly submitted to the jury for determination and that the trial judge correctly disposed of the appellant's motion for judgment *non obstante veredicto*.

However, I do not think that he correctly disposed of the appellant's motion for a new trial and I am of the opinion that the judgment of the lower court should be reversed and a new trial ordered.

The exceptions raised a number of questions other than the principal question hereinafter discussed. With respect to

such other questions, I am not convinced that all of them are totally without merit. However, in view of the decision of the majority, I shall address this dissenting opinion only to an issue wherein I think there was clearly prejudicial error below, whereby, in my view, the appellant was deprived of a substantial legal right and was not accorded a fair trial.

The most serious question raised by appellant's exceptions is the contention of error on the part of the trial judge in refusing to allow appellant's attorney to cross examine the respondent Garrett relative to the disability income that he received from other insurance companies.

In the course of and near the end of the direct examination of the respondent the following evidence was offered in his behalf:

"Q. Mr. Garrett, if you were able, would you work, go to work now?

"A. I certainly would. I much rather be working than in the condition I am now.

"Q. The disability payments you receive, what is the comparison between that and your earned income the last year that you were employed?

"A. Some thirty-five or forty percent.

"Q. Which is more, your earned income or the amount you are paid disability from the insurance company?

"A. My earned income would be approximately three times from what I draw from these insurance companies, yes, sir."

Appellant's counsel sought on cross examination to elicit information as to the total amount of disability benefits drawn by the respondent and upon objection by respondent, the jury was excused. In the absence of the jury the respondent admitted that up until about December 1959 he had been receiving disability benefits from the defendant and other insurance companies in the total amount of six thousand six hundred dollars per year, and, in addition thereto, the bene-

fit of waiver of premiums to the extent of approximately nineteen hundred dollars per annum, making a total of approximately eighty-five hundred dollars in tax-free benefits which he was entitled to receive if totally and permanently disabled, within the terms of the various policies, as against the nine thousand eight hundred sixty-five dollars, which he earned prior to taxes, when last regularly employed. The trial judge ruled this line of cross examination irrelevant and incompetent and refused to allow defense counsel to bring these facts out in the presence of the jury. This, in my view, was clearly error.

The record reflects that the respondent testified at length as to his disability and the medical testimony supporting his claim of disability is, at least in part, based on subjective symptoms, hence, whether respondent is in truth totally and permanently disabled within the terms of the policies and the applicable law depends in very great measure on his credibility.

I am, therefore, of the view that the attempted cross examination of the respondent was perfectly proper and should have been allowed for the purpose of testing the credibility of the respondent, even if he had not sought to bolster his credibility and improve his standing with the jury by giving a misleading, if not totally untrue, picture of his financial status in his alleged disabled state, as compared with his financial status while still gainfully employed.

Certainly, when he went into the issue, the appellant, as a matter of right, was entitled to cross examine him thereabout. Moreover, the record reflects that counsel for the respondent made further capital of the misleading testimony by arguing to the jury that the respondent certainly would not give up an earned income of nine thousand eight hundred sixty-five dollars per year for the sake of drawing a mere two hundred fifty dollars per month in disability benefits, unless he were truly disabled. True, no objection was made to this argument by counsel during the course of the

argument, but the judge had, in effect, already ruled against the appellant on this point.

In Volume 2, Conrad's Modern Trial Evidence, Sec. 1182, it is said that the purposes of cross examination are "to provide a searching test of the intelligence, memory, accuracy and veracity of a witness; to support, modify, or explain what has been said and to develop new or old facts in a view favorable to a cross examiner, it being one of the safeguards to bring out accuracy and truthfulness; to weaken or show the untruthfulness of the witness examined or his bias or prejudice; to extract the remaining qualifying circumstances, if any, known to the witness, but previously undisclosed by him; * * *"

Again, at Sec. 1183, it is said: "The right of cross examination is a valuable right, not privilege, essential to the proper administration of justice. It is accorded to every litigant who finds himself confronted by adverse testimony and the right may not be unduly restricted or interfered with by the court."

Further, in Sec. 1184, it is said: "that great latitude should be allowed in cross examination of certain types of witnesses, such as * * *, adverse parties, * * *."

58 Am. Jur. 369, Witnesses, Sec. 676, reads as follows:

"676—Cross examination. The right to impeach a witness by cross examination is universally recognized. A fact tending to impair the credibility of a witness by showing his interest, bias, ignorance, motives, or that he is depraved in character, may be shown on cross examination.

"Cross examination of a witness to affect credibilty is largely discretionary as to the extent and period to be covered. The extent to which cross examination may be carried must be determined by the relation and apparent character and bearing of the witness under examination and the circumstances attending the particular case on trial. *This does not mean that the court in its discretion may entirely exclude the testimony*. Indeed, a wide range should be allowed on

cross examination when the questions propounded seek to elicit the *motives,* interest, or animus of the witness as connected with the cause or the parties thereto, upon which matters he may be contradicted by other evidence. Likewise, considerable latitude should be permitted in the propounding of questions on cross examination which seek to test the memory or credibility of the witness." (Emphasis added.)

In the case of *Alford v. United States,* 282 U. S. 687, 51 S. Ct. 218, 75 L. Ed. 624, opinion by Mr. Justice Stone, later Chief Justice, it was held that while the extent of cross examination with respect to an appropriate subject of inquiry was within the sound discretion of the trial court, the denial of reasonable latitude in cross examination of a witness was prejudicial error. In that case counsel for defendant was not allowed to bring out on cross examination the fact that a witness for the Government was then in custody of Federal authorities, it being contended by the defense that his testimony was possibly affected by fear or hope of favor growing out of his detention. The Court said:

"The extent of cross examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. He may exercise a reasonable judgment in determining when the subject is exhausted. * * * But no such case is presented here. The trial court cut off *in limine* all inquiry on a subject with respect to which the defense was entitled to a reasonable cross examination. This was an abuse of discretion and prejudicial error."

All pertinent decisions of this court, which have come to the writer's attention, are in accord with the foregoing authorities.

. In the case of *State v. Williamson,* 65 S. C. 242, 43 S. E. 671, this Court said:

"The general rule as to cross examination is thus stated in Stephens' Digest of the Law of Evidence: 'When a witness is cross examined, he may be asked any questions which tend (1) to test his accuracy, veracity, or credibility, or (2)

shake his credit by injuring his character.' The extent of a cross examination is very largely entrusted to the discretion of the trial court. Subject to this discretion, and subject to the right of a witness to decline to answer any question tending to criminate himself, *the scope of the cross examination is unlimited, when its purpose is to test the credibility of the witness.*" (Emphasis added.)

The case of *City of Greenville v. Spencer,* 77 S. C. 50, 57 S. E. 638, 639, involved an appeal in a case tried in the Mayor's Court of the City of Greenville. In that case, after a number of questions were asked on a particular point, upon objection, the trial court stopped further cross examination, which action was affirmed by the Supreme Court. This court, after stating the general rule, said:

"A different question would be presented if there had been any substantial or prejudicial interference with the right of cross examination."

In the case of *Bunch v. Charleston & W. C. R. R. Co.,* 91 S. C. 139, 74 S. E. 363, this Court said: "While it is true that the scope of the cross examination is largely in the discretion of the trial judge, still, when the question is as to the relevancy of the evidence, or whether it is in reply or no, it becomes a matter of law upon which this court ought to pass."

In the case of *Charping v. Toxaway Mills,* 70 S. C. 470, 50 S. E. 186, a witness testified that a piece of timber was too small to bear a certain weight and the court held that it was clearly proper to allow the adverse party to contradict this testimony by proof that the witness afterwards used timber the same size to bear the same weight at another place and time, against the contention that such evidence involved a collateral and irrelevant matter.

*Peay v. Durham Life Insurance Co.,* 185 S. C. 78, 193 S. E. 199, is more nearly in point with the facts here than any South Carolina case which I have discovered. That case was a suit arising out of an insurance policy, and the plain-

tiff was apparently confused in regard to the name of the agent of the company who allegedly refused to take the premiums on the policy and who told her the policy was canceled. On cross examination, counsel for the insurance company sought to cross examine the plaintiff in relation to the policies which she held with other companies, one of which had offices in the same building with and adjacent to the offices of the defendant; a matter which went directly to the credibility of the witness as to whether she had confused the agents of other insurance companies with the agents of the defendant. He was denied this opportunity and the lower court was reversed, this court saying: "It is true that the trial judge is vested with large discretion in the matter of competency, pertinency, and admissibility of testimony, but it is equally true that if, in the exercise of discretion, he infringes upon a legal right of a party to the trial, this court will review his action.

"We think such a situation is here disclosed, and that the ruling of the trial court was erroneous."

In my view, the case of *State v. Maxey*, 218 S. C. 106, 62 S. E. (2d) 100 (cited in the majority opinion), is not at all in conflict with the foregoing authorities and is simply not in point on the question under discussion. That case states and applies the broad rule as to the discretion of the trial judge with respect to the general range and extent of cross examination. The alleged error, however, was that the trial court had allowed too much latitude in cross examination, and not deprivation of the right of cross examination as is the case here.

The study of many cases, both civil and criminal, wherein the broad general rule as to discretion of the trial judge is actually applied, and not merely stated, shows that in most of them the issue was either: (1) whether or not the trial judge had allowed too much latitude, just as in the cited case, or: (2) whether the trial judge correctly exercised his discretion in determining that a particular topic of

cross examination had been sufficiently exhausted. Research on my part has disclosed no case in this or any other jurisdiction which has actually applied the broad rule where the trial judge cut off *in limine* cross examination on a point that was either properly in reply to testimony adduced by the opposition or went directly to the veracity of the witness being cross examined.

The clear weight of authority is to the effect that if the attempted cross examination is either properly in reply or goes to the veracity of the witness, the trial judge has no right or discretion to cut off such cross examination *in limine* and when he does so, it is prejudicial error.

In my humble opinion neither the case of *Dunlap v. Metropolitan Life Ins. Co.,* 235 S. C. 206, 110 S. E. (2d) 856, nor the Missouri case of *Wiener v. Mutual Life Ins. Co. of New York,* 352 Mo. 673, 179 S. W. (2d) 39, is here in point, both of them being readily distinguishable.

In the *Dunlap case* the plaintiff was a dentist by profession and the defendant insurance company sought by way of pretrial examination to elicit information as to plaintiff's investment income, a matter totally irrelevant to any issue raised by the pleadings. His investment income was in no way connected with his ability or disability. The plaintiff in that case did not seek, as did the plaintiff here, to bolster his credibility as to his disability by giving a distorted picture of his income status, and, moreover, no question of his credibility could arise until he took the stand and testified. Attempting to obtain information in advance of the trial as to an issue not made relevant by the pleadings is a far cry from asking questions in cross examination which are in direct reply to an issue raised by the plaintiff and which go directly to the credibility of the plaintiff as a witness.

In the *Wiener case* the plaintiff was a doctor and the opinion shows that his disability within the terms of the policy did not rest largely upon his own testimony, as in the instant case, but that he had been examined by a number of

physicians and every one had advised him not to go back to practice because of the organic disease of his heart, which advice the doctor followed. The court did hold that under the facts of that particular case it was prejudicial error to allow the defendant company to bring out on cross examination of the doctor that he was receiving disability payments from other insurance companies, amounting to thirteen thousand seven hundred fifty dollars a year. The court, however, recognized that its ruling was not one of general application and that it was, in fact, restricted to the facts of the particular case. The decision reversed the lower court on several other grounds in addition to the ground mentioned, but on the particular point, *inter alia,* said the following:

"In *Jennings v. United States,* 5 Cir., 73 F. (2d) 470, there is the statement that a defendant may bring out the motives why a claimant of disability benefits has not worked, for example—whether the failure to work was due to inability or the lack of a felt necessity. We do not regard this as a rule of general application because 'each case presents its own setting, and no general rule (as to the admissibility of such evidence) can be laid down in advance.' *Rose v. United States,* 10 Cir., 70 F. (2d) 68, 69. Its admissibility 'depends upon the fact issues and the situation developed by the evidence of such particular case.' *Cockrell v. United States,* 8 Cir., 74 F. (2d) 151, 154. This is so because 'evidence of insured's wealth or his poverty, his income or his expenses, as such, is ordinarily of no materiality and may in some cases cause sympathy or prejudice to influence the verdict.' *United States v. Dudley,* 9 Cir., 64 F. (2d) 743, 745. In the latter case the court found such evidence nonprejudicial because it was invited. The same was true in the *Jennings case* and in *Prevette v. United States,* 4 Cir., 68 F. (2d) 112, and *Morrow v. United States,* 7 Cir., 101 F. (2d) 654."

Here, just as in the cases last cited by the Missouri court, the evidence sought to be brought out by the appellant was

invited by the testimony of the respondent himself. He clearly sought to bolster his credibility and appeal to the sympathy of the jury. No other purpose for offering such testimony on the part of the respondent here is readily apparent. In brief, I do not believe that the *Wiener case* is authority for the decision reached by the majority here. A reading of that opinion rather leads me to the conclusion that the Missouri court would arrive at a different conclusion if confronted with the factual situation here involved.